*Gottlieb v. Lamont*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of April, two thousand twenty-three.

PRESENT:    ROBERT D. SACK,
            SUSAN L. CARNEY,
            JOSEPH F. BIANCO,

*Circuit Judges.*

_____

Andy Gottlieb, on behalf of themselves and all others similarly situated, Lorna Chand, on behalf of themselves and all others similarly situated, Jason W. Bartlett,

            *Plaintiffs-Appellants*,

Robert Halstead,

            *Intervenor-Plaintiff-Appellant*,

            v.                                              22-449

Ned Lamont, Governor of the State of Connecticut, Denise Merrill, Secretary of the State of Connecticut, Democratic State Central Committee,

FOR PLAINTIFFS-APPELLANTS:    ALEXANDER T. TAUBES, Esq., New Haven, CT.

FOR DEFENDANTS-APPELLEES
NED LAMONT, GOVERNOR OF THE
STATE OF CONNECTICUT AND DENISE
MERRILL, SECRETARY OF THE
STATE OF CONNECTICUT:    ALMA ROSE NUNLEY, Assistant Attorney General, *for* William Tong, Attorney General of Connecticut, Hartford, CT.

Appeal from the judgment of the United States District Court for the District of Connecticut (Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs appeal from the district court's grant of summary judgment, entered on February 15, 2022, in favor of defendants-appellees Ned Lamont, Governor of the State of Connecticut, Denise Merrill, Secretary of the State of Connecticut, and the Democratic State Central Committee. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

Plaintiff Andy Gottlieb was a Democratic candidate for the Connecticut State Senate's 12th District in 2018. However, his name was not placed on the party's primary ballot because he neither received enough delegate votes at the party's convention nor submitted sufficient valid petition signatures. Similarly, plaintiff Jason Bartlett, a Democratic candidate for the Connecticut

[*] The Democratic State Central Committee did not file a notice of appearance in this Court. In addition, plaintiff Richard Lacourciere was removed from the operative complaint. The clerk of court is respectfully instructed to amend the caption to conform with the above.

State Senate's 10th District in 2020, failed to gain ballot access through either the convention or petition method. Plaintiff Lorna Chand, a registered voter in Connecticut, was Gottlieb's campaign treasurer. Plaintiffs brought this action pursuant to 42 U.S.C. § 1983, challenging Connecticut's primary ballot access laws under the First and Fourteenth Amendments, alleging that such laws "place an unconstitutional severe undue burden on candidates running for office in state primaries and party voters seeking to vote for the candidate of their choice." App'x at 15.

Under Connecticut law, candidates of major political parties seeking to have their name placed on their party's primary ballot must either: (1) receive the party's endorsement at the party convention; or (2) earn at least 15% of the delegate vote at the party convention; or (3) submit petition forms with valid signatures from a certain percentage of party members. Plaintiffs primarily take issue with the petition requirements.

The specific requirements for the petition route vary based on the office. Candidates for statewide or congressional office must obtain signatures from 2% of enrolled party members in the state or congressional district in a forty-two-day period. Candidates for district or municipal office must secure signatures from 5% of enrolled party members in that district or municipality in a fourteen-day window. Regardless of the office, signatures must be obtained from enrolled party members in the district where the candidate seeks office, and the petition circulator must attest to the veracity of the signatures. Party members are not prohibited from signing multiple petitions nor are they required to commit to voting for the petitioning candidate in the primary.

Plaintiffs argue that these petition requirements serve simply to protect incumbents, and that the requirements infringe on candidates' and voters' constitutional rights to ballot access. To evaluate this claim, the district court applied what has come to be known as the *Anderson-Burdick* framework. *See Burdick v. Takushi*, 504 U.S. 428 (1992); *Anderson v. Celebrezze*, 460 U.S. 780

3

(1983). Under *Anderson-Burdick*, the district court concluded that "plaintiffs have failed to bring forth evidence upon which a reasonable jury could conclude that Connecticut's overall scheme for accessing the primary ballot imposes a severe burden on them." *Gottlieb v. Lamont*, No. 3:20-cv-623, 2022 WL 375525, at *13 (D. Conn. Feb. 8, 2022). In particular, with respect to plaintiffs' challenge to the petition requirements, the district court held that "[t]hough the requirements certainly are a burden on candidates – perhaps even a significant one – they do not constitute a severe burden that virtually excludes candidates from the ballot." *Id.* at 12 (alterations adopted) (internal quotation marks and citation omitted). Based on that conclusion, the district court determined that strict scrutiny did not apply and, instead, conducted the requisite balancing test under *Anderson-Burdick*. Under that balancing test, the district court held "that there is no evidence in the record upon which a reasonable jury could conclude that the state's interest in promulgating these regulations [regarding petition requirements] does not outweigh the reasonable and nondiscriminatory burdens they impose on plaintiff[s'] rights." *Id.* at 14. Accordingly, the court granted summary judgment to defendants.[1]

On appeal, plaintiffs argue, among other things, that the district court erred because the petition requirements severely burden ballot access and thus are subject to strict scrutiny, which defendants have failed to satisfy. In the alternative, plaintiffs contend that, even if the burden is not "severe" under *Anderson-Burdick*, Connecticut's interests do not outweigh the burden on plaintiffs' rights with respect to the petition requirements.

---

[1] The district court also granted summary judgment to defendants on the alternative ground that the convention route to ballot access was constitutional, and thus the petition pathway was *a fortiori* constitutional because it merely broadened opportunities for ballot access. *Gottlieb*, 2022 WL 375525, at *13 (citing *LaRouche v. Kezer*, 990 F.2d 36 (2d Cir. 1993)). However, because we conclude that the petition requirements are constitutional under the *Anderson-Burdick* balancing test for the reasons discussed below, we need not—and do not—address this alternative ground.

We review *de novo* a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor. *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As the district court correctly ruled, challenges to state restrictions on ballot access are analyzed under the *Anderson-Burdick* framework, which consists of a two-step inquiry. *Burdick*, 504 U.S. at 434. First, the court asks if the regulation's burden on the constitutional rights in question is "severe" or "reasonable" and "nondiscriminatory." *Id.* If the burden is "severe," then the regulation is subject to strict scrutiny. *Id.* (citing *Norman v. Reed*, 502 U.S. 279, 289 (1992)). By contrast, if the burden is only "reasonable" and "nondiscriminatory," then "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson*, 460 U.S. at 788). "Review in such circumstances will be quite deferential, and we will not require 'elaborate, empirical verification of the weightiness of the State's asserted justifications.' Nonetheless, in cases . . . where the burden imposed by the law is non-trivial, we must weigh the State's justification against the burden imposed." *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997)).

As set forth below, we conclude that the district court correctly determined, based upon the uncontroverted evidence in the record, that the burden imposed by the petition requirements (as well as by the overall primary ballot access laws) is not severe and that Connecticut's asserted regulatory interests outweigh any such burden.

5

At step one, the "hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 177 (2d Cir. 2020) (internal quotation marks and citation omitted). Thus, our lodestar is whether a "reasonably diligent candidate could be expected to be able to meet the requirements and gain a place on the ballot." *Id.* at 178 (internal quotation marks and citations omitted). We consider the "burden imposed by the challenged regulation . . . not . . . in isolation, but within the context of the state's overall scheme of election regulations." *Lerman v. Bd. of Elections N.Y.C.*, 232 F.3d 135, 145 (2d Cir. 2000).

Plaintiffs argue that Connecticut's petition requirements impose a severe burden because, in their view, the requirements "virtually exclude all but the most well-connected and well-resourced candidates from access to the primary ballot." Appellants' Br. at 12. Specifically, plaintiffs maintain that the fourteen-day petition gathering window for district and municipal races is unduly short, the notarization requirement is unnecessary, and the number of signatures required is too high. We find plaintiffs' arguments unpersuasive.

As a threshold matter, the Supreme Court has upheld petitioning requirements where candidates were required to obtain signatures equivalent to 5% of registered voters. *See, e.g.*, *Jenness v. Fortson*, 403 U.S. 431 (1971). This Court has thus observed that "a requirement that ballot access petitions be signed by at least 5% of the relevant voter pool is generally valid, despite any burden on voter choice that results when such a petition is unable to meet the requirement." *Prestia v. O'Connor*, 178 F.3d 86, 88 (2d Cir. 1999) (per curiam). Moreover, the uncontroverted historical statistics regarding primaries in Connecticut do not support a finding that the requisite percentage by itself, or in combination with the other petition requirements, prevent a reasonably diligent candidate from gaining a place on the primary ballot.

It is undisputed that, between 2006 and 2018, 200 primaries were conducted in Connecticut. During each election cycle in that timeframe, there were at least seventeen and as many as forty-nine non-endorsed candidates who participated in primaries. As noted by the district court, in 2018, forty-nine non-endorsed candidates were able to access the ballot in party primaries, and eighteen of those candidates accessed the ballot through petitioning. Similarly, in 2016, there were seventeen non-endorsed candidates on the primary ballots, including ten candidates who had gained access through petitioning. In addition, primary elections for Governor and Lieutenant Governor have taken place for at least one major party in every statewide election from 2006 through 2018, and in 2018 non-endorsed petitioning candidates from both major parties attained primary ballot access for the office of governor. Thus, the uncontroverted evidence supports the conclusion that the overall primary ballot access laws, including the petition requirements, do not result in the "exclusion or virtual exclusion" of "reasonably diligent" candidates from the primary ballots for office in Connecticut. *Libertarian Party of Conn.*, 977 F.3d at 177–78 (internal quotation marks and citations omitted).

In response to this uncontroverted evidence, plaintiffs offer no proof that reasonably diligent candidates are unable to gain ballot access through petitioning. Plaintiffs identified only two candidates who attempted, and failed, to obtain ballot access via petitions. However, the circumstances surrounding those candidates hardly demonstrate that the petition requirements present an insurmountable or virtually insurmountable obstacle to a reasonably diligent candidate. Indeed, both candidates obtained more raw signatures than were required to appear on the primary ballots but failed to qualify because of errors that invalidated numerous signatures.[2] Furthermore,

---

[2] The first candidate, Bartlett, who sought to petition onto the primary ballot for the State Senate's 10th District in 2020, obtained approximately 1,400 signatures during the 14-day window. This was above the requisite amount, but Bartlett did not qualify by petition because he did not meet certain requirements

7

one of the original plaintiffs, Lacourciere, was not named as a plaintiff in the operative complaint after he successfully petitioned onto the primary ballot for State Representative in the 24th Assembly District in 2020.

Plaintiffs, relying on data contained in an "expert report" authored by Gottlieb, assert that Connecticut has one of the lowest primary election rates of any state. The district court excluded Gottlieb's report because the court concluded that Gottlieb was not qualified to testify as an expert on election law. Plaintiffs do not challenge that ruling on appeal. In any event, plaintiffs have failed to establish a causal link between Connecticut's petition requirements and its assertedly low rate of primaries. There could be a myriad of factors, apart from a state's primary ballot access restrictions, that affect its rate of primaries. Plaintiffs presented no evidence that demonstrates how, if at all, Connecticut's petition requirements impact the rate at which primary elections are held in the state.

In short, given the uncontroverted evidence of numerous candidates who have successfully attained ballot access in Connecticut primaries (including through petitioning) and the absence of evidence demonstrating that reasonably diligent candidates are excluded or virtually excluded from the primary ballot by the petition requirements, the district court correctly determined that plaintiffs failed to raise a genuine issue of material fact as to whether the petition route in particular, or the overall primary process scheme in general, imposes a severe burden on plaintiffs' constitutional rights. *See Libertarian Party of Conn.*, 977 F.3d at 177. Thus, strict scrutiny does

---

regarding petition pages. The second candidate, Gottlieb, who sought to petition onto the primary ballot for the State Senate's 12th District in 2018, collected over 1,000 signatures and fell only 32 signatures short of the requisite number for the primary ballot. His bid failed because several of the signatures he submitted were invalidated. Gottlieb later secured primary ballot access, however, in the 2022 primary for the office of State Representative in the 98th Assembly District.

not apply, and, instead, we evaluate the petition requirements under *Anderson-Burdick*'s balancing test.[3]

Under that balancing test, "the State's important regulatory interests are generally sufficient to justify" reasonable and nondiscriminatory restrictions. *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788). Here, Connecticut asserted an important regulatory interest in "conducting orderly, fair, and transparent elections." Appellees' Br. at 52 (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 233 (1989)). To further this interest, a state may require "a candidate to have a 'modicum of support' within their district before their name appears on the ballot . . . to 'avoid, confusion, deception, and even frustration of the democratic process.'" *Lerman*, 232 F.3d at 151 (alteration adopted) (quoting *Jenness*, 403 U.S. at 442). That interest may be advanced by requiring candidates to "obtain a minimum number of signatures from district residents." *Id.* Additionally, it is well established that states have an important interest in ensuring "the stability of their political systems" and avoiding "party-splintering and excessive factionalism." *Timmons*, 520 U.S. at 366–67. By making candidates wait until after or shortly before the nominating convention to begin gathering signatures, Connecticut's timing requirements for gathering petitions advance this goal by "encourag[ing] major party candidates to seek the support of the most engaged members of the party," "rather than bypass[ing] the conventions altogether." Dist. Ct. Dkt. No. 72-3 at 17 ¶¶ 62–63. And Connecticut's signature requirements serve to "ensure that only well-organized candidates with support among the enrolled party members appear on the primary ballot." *Id.* ¶ 65. We conclude that these important state

---

[3] On appeal, plaintiffs limited their arguments under the *Anderson-Burdick* balancing test to the petition requirements and thus have abandoned any challenge at step two as to the other components of Connecticut's overall primary ballot access framework. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995).

interests outweigh the burdens imposed by the petition requirements for primary ballot access in Connecticut. Accordingly, the district court correctly determined that defendants were entitled to summary judgment.

*　　*　　*

We have considered plaintiffs' remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk of Court